IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD J. EVERS, et al.      :     CIVIL ACTION
                         :
         v.               :
                         :
THE CORYN GROUP, INC., et al.     :     NO. 08-CV-6032

## MEMORANDUM AND ORDER

Ditter, J.                                       May 2, 2011

       This diversity action alleges personal injury claims resulting from a slip and fall in a hotel

bathroom in the Dreams Punta Cana Resort ("Dreams Resort") in the Dominican Republic.

Inversiones Vilazul, S.A. ("Inversiones") was the owner of this resort at the time of this accident.

Before me is defendant Inversiones's motion to dismiss for lack of personal jurisdiction pursuant

to Federal Rule of Civil Procedure 12(b)(2).[1]  For the reasons discussed, this motion will be

GRANTED.

     I.   Factual and Procedural History

       This action was initiated in the Court of Common Pleas of Philadelphia County,

Pennsylvania and removed to this court by several of the co-defendants.  The plaintiffs, Richard

and Mary Evers brought this lawsuit for injuries suffered by Mr. Evers while a guest of Dreams

Resort.  Mr. Evers alleges he was injured when he slipped and fell "as the result of a dangerous

and hazardous condition of the bathroom connected to his room." *Amend. Compl.*, ¶ 36.  Evers

attributes his fall to the allegedly defective design or condition of the shower or bathroom floor

and the failure to provide appropriate safeguards.  The Everses allege that the Inversiones is

---

[1] A prior motion to dismiss was denied without prejudice by the Honorable Petrese B. Tucker to permit
jurisdictional discovery to be completed.  The case was transferred to my docket, and after the completion of the
discovery on jurisdiction, this motion was filed.

subject to this court's jurisdiction because it owned Dreams Resort and had contracted with AMR Resort Management, LLC, to operate and manage Dreams Resort. AMR Resort Management, LLC, is a foreign corporation with its principle place of business in Newtown Square, Pennsylvania.

Inversiones is a Dominican corporation maintaining its registered and principle office in the capital city of Santo Domingo. It is a wholly-owned subsidiary of Playa Hotels and Resorts, S.L. ("Playa"), a Spanish holding company. Playa has no employees; instead it has asset management agreements with other companies that provide their employees for Playa as part of those arrangements.[2] *See Dep. of Pierre M. Donahue,* Mar. 19, 2010, at 25-26.

Plaintiffs John and Mary Evers contend that Inversiones "purposefully and intentionally came to Pennsylvania to negotiate certain agreements for the ownership, management, operation, and maintenance" of Dreams Resort, and that it is those "duties and obligations that are at the heart of the plaintiffs' claims." *Plts.' Resp.* 3. The Everses assert that the operation of the resort occurs within this district; that Inversiones pays monthly management fees and incentives pursuant to these agreements, and the payments are made to the Pennsylvania bank account of a Pennsylvania-based management company. *Id*. at 4. They contend this is sufficient activity to subject Inversiones to both the general and specific jurisdiction of this court.

II. Standard of Review

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident

---

[2] Playa bought hotels, including Dreams Resort, from Mullen-related entities in December, 2007. *Id*. at 47-48. A number of individuals in the Mullen family are members of AM Resorts, LLC, and Mullen appears in the names of several of the non-offshore defendant corporations and LLCs involved in this case.

to the extent permissible under the law of the forum state. The Pennsylvania Long-Arm Statute,[3]
authorizes the court to exercise jurisdiction to the fullest extent permitted by the due process
clause of the United States Constitution.

If a foreign party maintains "continuous and systematic" contacts with a state, the state
has general jurisdiction over the party and the non-resident may be sued in that state on any
claim. *Hlvavac v. DGG Properties*, No. 04-6112, 2005 U.S. Dist. LEXIS 6081, *6 (E.D. Pa.
Apr. 8, 2005) (citations omitted). In the absence of such contacts, courts may assert specific
jurisdiction if the litigation is "related to or arises out of the defendant's contacts with the
forum." *Id.*, at *7. The minimum contacts must also proximately result from the actions of the
defendant itself, thereby creating a "substantial connection" within the forum state such that the
defendant should "reasonably expect to be haled into court" there. *Burger King Corp. v.
Rudzewicz*, 471 U.S. 462, 474 (1985).

The burden of proof with respect to jurisdiction is on the plaintiffs. *General Electric Co.
v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). Moreover, once the issue of jurisdiction is
raised, plaintiffs cannot rely on allegations in the pleadings, but must provide sworn affidavits or
other competent evidence to support their allegations. *Time Share Vacation Club v. Atlantic*

---

[3] The Pennsylvania Long-Arm Statute permits the assertion of personal jurisdiction over a foreign defendant
if the non-resident engages in the following:

(1) transacting business in this Commonwealth;
(2) contracting to supply services or things in this Commonwealth;
(3) causing any harm or tortious injury by act or omission in this Commonwealth;
(4) causing harm or injury in this Commonwealth by an act or omission outside of this Commonwealth.

42 Pa. C.S.A. § 5322(a). Under the facts of this case, the only potentially applicable sections of the statute are (1)
transacting business in this Commonwealth (general jurisdiction), or (3) causing harm or injury by act or omission in
this Commonwealth (specific jurisdiction).

*Resorts, Ltd.*, 735 F.2d 61, 66-67 (3d Cir. 1984).

III.  Discussion

The Everses allege specific jurisdiction based on Inversiones' activities within Pennsylvania.  They claim Inversiones knowingly entered into a management agreement with the Newtown Square-based company, AMR Resort Management LLC, and thereby submitted to the jurisdiction of this court.  According to the Everses, this management agreement was "negotiated over several months through the exchange of materials by Internet, telephone, and fax into and out of Pennsylvania," and "[o]n at least one occasion, representatives of Playa and Inversiones traveled to Philadelphia for a lengthy negotiating session that was held at Morgan Lewis' Philadelphia office." *Plts.' Resp.* 9-10.  The Everses contend that every aspect of the operation and management of the Dreams Resort occurs and is directed from within this district as provided by the following provision of the agreement:

> [AMR Resort Management LLC] agrees to undertake and perform in name or on behalf of [Iversiones and its agent] (i) all marketing and sales operations related to the Hotel (including without limitation, sale of lodging services in rooms, and development and implementation of marketing and advertising campaigns for the hotel; (ii) operation and management of the Hotel as an all inclusive hotel; and (iii) all activities related to and commonly included in marketing, sales, operation and management and, to the extent feasible, conduct such activities in a manner consistent with customary business and hospitality practices in the Dominican Republic.

*Id.* at 10 (citing *Plts.' Resp. Exh.* 2, § 3.1(a)).  In return, Inversiones pays AMR Resorts Management, LLC, a monthly management fee and an annual incentive fee that are wired to a Pennsylvania bank.  Thus, the Everses contend that the negotiation and execution of a management agreement within this jurisdiction, with a Pennsylvania company, and requiring payments be made to a bank located in Pennsylvania is sufficient to establish special jurisdiction

over Inversiones.

Inversiones responds that there is no basis for specific jurisdiction as to it because this is a premises liability case filed by New Jersey residents arising from an accident in a Dominican hotel and the claim is based on the alleged negligence of the defendants in their ownership, operation, maintenance, and control of that foreign property. *Def's. Br.* 5-6. I agree.

Inversiones' controller, Javier Landa, has provided an affidavit in support of Iversiones' motion. He states that Inversiones has never conducted business in Pennsylvania, nor has it ever been registered to conduct business in Pennsylvania. It has never had an office, telephone listing or mailing address in Pennsylvania. It has no employees or corporate officers working or residing in Pennsylvania. It has never owned or maintained any assets, property or bank accounts in Pennsylvania, and obviously, it does not consent to jurisdiction. The Everses do not contest Mr. Landa's statements. Thus, none of the traditional indicia of activities sufficient to establish general jurisdiction over a foreign corporation are present.

Even though this was a contract with a Pennsylvania company to manage Dreams Resort, AMR Resort Management, LLC's performance of its duties under the contract clearly were fulfilled in the Dominican Republic. These facts do not support specific jurisdiction because this premises liability action does not arise out of or relate to the activity in Pennsylvania. Any mismanagement that might have led to this injury occurred in the Dominican Republic.[4] A defendant should not be subjected to jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.,* 471 U.S. at 475-76.

---

[4] It could be argued that this contract might provide a sufficient basis for jurisdiction in Pennsylvania if the litigation was between the parties to the contract and concerned the implementation or breach of the contract, but it is not sufficient to establish specific jurisdiction for a premises liability case.

Courts that have considered premises liability where the negligence has occurred in a foreign jurisdiction have found no Pennsylvania jurisdiction. In a case involving a bathroom slip and fall in a Mexican hotel, Chief Judge Harvey Bartle, III, refused to find personal jurisdiction over the foreign hotel where the alleged negligence and the plaintiff's resulting injury occurred outside Pennsylvania because "specific jurisdiction generally may not be exercised by courts sitting in Pennsylvania because the plaintiff's cause of action is not related to contact with the forum." *Zameska v. Seguros Ing Commercial America, S.A. DE C.V.*, No. 04-1895, 2005 U.S. Dist. LEXIS 20103, *4 (E.D. Pa. Mar. 3, 2005).

The Everses contend that the management contract negotiated and executed in Pennsylvania with a Pennsylvania company, and payments received in Pennsylvania pursuant to the contract, establish general jurisdiction. Neither establishes the type of continuous and systematic contact necessary to obtain personal jurisdiction over Iversiones. *See Inzillo v. The Continental Plaza*, No. 99-0100, 2000 U.S. Dist. LEXIS 20103, * 15 (M.D. Pa. Nov. 27, 2000) (finding payment of commissions to travel agencies insufficient to prove continuous and systematic contacts with forum).

Alternatively, the Everses assert that this court has general jurisdiction over Iversiones because it is the alter-ego of the Pennsylvania defendants. They allege that the defendants in this case are closely held and interrelated business entities that share office space, corporate officers and board members, operating capital, business interests, business properties, fictitious names and joint ventures and offer an arbitration decision dated December 5, 2003, in support of this claim. However, this decision involves a trademark case and describes the relationship between

the Coryn Group, Inc. and AM Resorts LLC,[5] but makes no mention of Dreams Resort or Inversiones.

The Everses provide a copy of a web page and an advertisement that they allege shows AM Resorts Management, LLC, holds itself out to the public as owning Dreams Resort where Mr. Evers was injured. These advertisements include Dreams Resort but do not specify ownership and are consistent with the management agreement between AMR Resorts Management, LLC, and Inversiones. I do not agree that management of a hotel is the same as a parent corporation in control of a subsidiary. In fact, this type of advertising has consistently been rejected as a basis to assert jurisdiction over a foreign defendant. *See e.g. Zemeska*, 2005 U.S. Dist. LEXIS 20103, at*4-6 (rejecting claim of general jurisdiction based on national or international advertising[6] and a website); *Hlavac*, 2005 U.S. Dist. LEXIS 6081 (finding no general jurisdiction despite advertising designed to attract Pennsylvania residents); *Litman v. Walt Disney World*, 2002 U.S. Dist. LEXIS 5115 (E.D. Pa. Mar. 26, 2002) (finding no specific jurisdiction where tortfeasor's negligence and plaintiff's resulting injury occurred outside Pennsylvania).

IV.  Conclusion

For all these reasons, I conclude that Inversiones does not have minimum contacts with Pennsylvania sufficient to satisfy notions of fair play and substantial justice and I shall grant its motion to dismiss. An appropriate order follows.

---

[5] Not AMR Resort Management, LLC, the company that managed Dreams Resort.

[6] The advertising included ads within the Apple Vacations section of *The Philadelphia Inquirer*.